IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CLEVELAND A. BALDWIN, | § | |
| | § | |
| Defendant Below- | § | No. 539, 2016 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID 1308009488A (N) |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: April 7, 2017
Decided: June 29, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED** in part and **REVERSED** and **REMANDED** in part.

Cleveland A. Baldwin, *pro se*, Smyrna, Delaware.

Gregory E. Smith, Esquire, Department of Justice, Wilmington, Delaware, for Appellee State of Delaware.

**STRINE**, Chief Justice:

The Superior Court Rule of Criminal Procedure that governs postconviction relief, Rule 61, has the difficult job of striking the balance between fair consideration of postconviction claims and the preservation of scarce defense resources. It does so by granting access to counsel for certain first petitions,[1] but also by allowing the Superior Court to weed out by summary dismissal claims that lack colorable merit.[2] Here, the Superior Court used that gating mechanism to summarily dismiss all the claims of a first petitioner without appointment of counsel for him, without adversarial briefing, and without any factual record beyond the form petition and trial record. On appeal, we conclude that the Superior Court was correct in most of its rulings, but that as to one claim, the Superior Court erred by not recognizing the potential merits of the claim and appointing counsel for the petitioner to present it in a more adequate way.

## I.

The appellant, Cleveland Baldwin, filed this appeal from the Superior Court's summary dismissal of his first timely motion for postconviction relief. The charges against Baldwin that led to the convictions he seeks to overturn were based on the allegation that he, along with two other black men, assaulted a tenant who supposedly owed Baldwin's aunt back rent. To wit, the State alleged that Baldwin

---

[1] Super. Ct. Crim. R. 61(e).
[2] *Id*. 61(d)(5).

confronted the victim, complained that he had disrespected his aunt, and pulled a

pipe out of his pants and beat him with it. Meanwhile, Baldwin's confreres joined

in by punching and kicking the victim. At trial, the State relied exclusively on

testimony by the victim, who said Baldwin committed the attack. The record is clear

that there were inconsistencies between the victim's testimony and statements the

victim had made to investigating officers. For his part, Baldwin's defense rested on

the proposition that he was not present when the attack occurred, and he testified to

that effect. Baldwin's aunt also testified that she witnessed the victim being beaten

up by three unknown white men. She denied seeing a pipe.

After the trial concluded, a Superior Court jury convicted Baldwin of one

count each of Assault in the First Degree, Possession of a Deadly Weapon During

the Commission of a Felony, Carrying a Concealed Deadly Weapon, and Conspiracy

in the Second Degree. On February 13, 2015, the Superior Court sentenced Baldwin

to a total period of eight years at Level V incarceration, to be suspended after serving

a minimum mandatory term of four years for decreasing levels of supervision. This

Court affirmed Baldwin's convictions on direct appeal.[3]

On September 29, 2016, Baldwin, acting *pro se*, filed his first timely motion

for postconviction relief asserting three claims of ineffective assistance of counsel

and one claim that the trial court erred in failing to strike a portion of the victim's

---

[3] *Baldwin v. State*, 129 A.3d 231, 2015 WL 7756857 (Del. Dec. 1, 2015) (ORDER).

testimony. At the time he filed his motion, Superior Court Criminal Rule 61(e)(1) provided, in part, that the Superior Court "shall appoint counsel for an indigent movant's first timely postconviction motion and request for appointment of counsel if the motion seeks to set aside . . . a judgment of conviction after a trial that has been affirmed by final order upon direct appellate review and is for a crime designated as a class A, B, or C felony under 11 *Del. C.* § 4205(b) . . . ."[4] Although Baldwin was convicted of two class B felonies, among others, and his convictions had been imposed after a trial and affirmed on appeal to this Court, he did not file a motion for the appointment of counsel.

Baldwin's motion was filed on the form that the Superior Court provides for litigants under Rule 61. The form consists of three pages. The accompanying instructions provide that all grounds for relief must be set forth in the proper space on the form. Petitioners are given three lines to set forth each claim and are informed that no additional pages are permitted, although they may use the reverse side of the sheet. If they wish to submit legal arguments, they are told they may file a separate memorandum, but are not required to do so.

---

[4] Super. Ct. Crim. R. 61(e)(1). Effective April 6, 2017, Rule 61(e)(1) now provides that, "Any indigent movant's request for appointment of counsel shall be filed contemporaneously with the movant's postconviction motion. Failure to file a contemporaneous request for appointment of counsel with the movant's postconviction motion may be deemed a waiver of counsel." The text of former Rule 61(e)(1) quoted in this Order was renumbered as Rule 61(e)(2).

3

Upon preliminary consideration, the Superior Court summarily dismissed Baldwin's petition under Rule 61(d)(5). Rule 61(d)(5) provides, "[i]f it plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief, the judge may enter an order for its summary dismissal and cause the movant to be notified."[5] Although the petition was summarily dismissed, the Superior Court, in fact, issued a formal decision analyzing and addressing each of Baldwin's claims in some depth, considering both the procedural bars of Rule 61(i) and the substance of the claims of ineffective assistance. We review that decision for abuse of discretion, although questions of law are reviewed de novo.[6]

## II.

With one exception, we find that the Superior Court properly decided that Baldwin's claims were subject to summary dismissal. The care that the Superior Court took in considering whether summary dismissal was appropriate was advisable, prudent, and to be commended. Precisely because summary dismissal involves resolving claims without an adversarial presentation, proceeding with care is important. That is especially so in a case like this involving Baldwin's first Rule 61 petition challenging serious felony convictions. That importance is highlighted

---

[5] Super. Ct. Crim. R. 61(d)(5).
[6] *State v. Reyes*, 155 A.3d 331, 339 (Del. 2017).

4

by another aspect of Rule 61, which accords defendants, like Baldwin, found guilty of multiple Class B felonies a chance to have counsel appointed upon request unless "it plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the [defendant] is not entitled to relief."[7]

As to Baldwin's claim that the Superior Court erred in failing to strike a portion of the victim's testimony due to the prosecutor's improper leading questions, we agree with the Superior Court's ruling that this claim is barred by Rule 61(i)(3) and that Baldwin offered no reason for his failure to raise this claim earlier. Moreover, with respect to Baldwin's claims that his counsel was ineffective at trial and on appeal for failing to allege that the State violated his confrontation rights by not calling the victim's boss as a witness and for failing to challenge the sufficiency of the evidence,[8] we affirm the Superior Court's denial of those claims for the reasons assigned by the Superior Court in its well-reasoned decision.[9]

**III.**

That brings us to the claim on which we part company with the Superior Court, a claim that highlights the hazards that sometimes accompany the summary dismissal tool in Rule 61. As noted, Baldwin's defense at trial was that he was not

---

[7] Super. Ct. Crim. R. 61(d)(f).

[8] Although trial counsel filed a post-trial motion for judgment of acquittal, he later withdrew the motion.

[9] *State v. Baldwin*, 2016 WL 5947248, *2 (Del. Super. Oct. 6, 2016) (ORDER).

present when the victim was attacked and never possessed the pipe. At trial, the State presented no forensic evidence—such as fingerprint or DNA evidence—physically linking Baldwin to the pipe. In closing, his counsel argued this point in seeking to convince the jury that, given the lack of corroborating evidence, it could not find Baldwin guilty beyond a reasonable doubt.[10]

In his Rule 61 petition, Baldwin argues, however, that his counsel fell short of his duties under *Strickland*[11] by failing to obtain fingerprint or DNA testing of the pipe by a qualified expert and in putting on expert testimony that there was no physical evidence that Baldwin had ever touched the pipe. Baldwin alleged that any testing done on the pipe would have shown negative results for the presence of Baldwin's fingerprints or DNA. Baldwin alleged that the exculpatory test results would have caused evidence of the pipe to be suppressed.

In its decision summarily dismissing this claim, the Superior Court said: "Baldwin has not established that the results would have been exculpatory, and second and more importantly, the absence of Baldwin's DNA or fingerprints would not have provided a legal basis for suppression."[12] The primary ground on which the Superior Court's decision was based is not arguable. The fact that no fingerprints

---

[10] Trial Tr. 106–07, Oct. 30, 2014.

[11] *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To prevail on a claim of ineffective assistance of counsel, *Strickland* requires a defendant to establish that: (i) his counsel's representation fell below an objective standard of reasonableness; and (ii) but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different.

[12] *Baldwin*, 2016 WL 5947248, at *2.

6

or DNA evidence linked Baldwin to the prints does not mean evidence of the pipe would not be admissible if, as happened, a foundation to admit the evidence was properly laid.

The more problematic ground is the one dismissing Baldwin's claims on the ground that Baldwin could not establish that the results of any testing would have been exculpatory. In this context, that reasoning has a Kafkaesque quality. Baldwin's point was that the pipe should have been tested by a counsel acting reasonably and that it was not. In his reply brief on appeal, Baldwin says:

> Trial counsel should have hired [an] expert to test pipe for DNA and fingerprints of defendant. I, the defendant, am positive that [neither] my fingerprints nor DNA would be lifted from recovered pipe. I specifically asked my trial counsel to get recovered weapon tested to prove that I did not possess any weapon. Counsel agreed but never acted.[13]

Precisely because this claim was summarily dismissed, Baldwin did not have the opportunity to present it through counsel, who could have fleshed out the argument in a more thorough and intelligible way. Likewise, because of the truncated procedure, there was no response from the State or any affidavit of trial counsel, as is traditionally presented when a Rule 61 *Strickland* claim proceeds to full briefing on the pleadings or an evidentiary hearing.

---

[13] Appellant's Reply Br. at 2.

It may well be that, upon full examination, counsel's decision not to get the pipe tested was not just reasonable, but smart. Counsel could well have concluded that the State's case was weakened by having to present a pipe as the primary instrument of the attack without having any way to physically link it to Baldwin. In this day and age of DNA and crime procedurals on television, counsel may have viewed the state of the record as favorable and feared that testing the pipe might cause more harm than good, if the results came back unfavorably.

For present purposes, however, what is important is that this is all surmise. The record in this case reflects that the trial was in material part a credibility contest between, on the one hand, the testimony of Baldwin who testified that "he was at home with his daughter at the time of the attack"[14] and the testimony of his aunt who supported his claim that he was not there when the assault occurred and, on the other, the contrary testimony of the victim. Test results on the alleged assault weapon potentially could have affected the jury's credibility determination. No doubt it was better for Baldwin that the State did not present DNA or fingerprint evidence that he touched the pipe. But, that does not mean that the jury might not have found it telling if Baldwin could have presented an expert who testified that the pipe was devoid of his prints and DNA. Although we recognize the scarcity of public resources and appreciate the care with which the Superior Court used the summary dismissal

---

[14] *Baldwin*, 2015 WL 7756857, at **1.

process, this claim has sufficient potential merit that it should not have been summarily dismissed. Thus, we reverse the dismissal of this specific claim, and remand for the appointment of counsel to file an amended petition stating this claim. The Superior Court may consider the claim on whatever schedule it, in its discretion, determines is sensible.

Thus, the judgment in this matter is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings consistent with this Opinion. Jurisdiction is not retained.